Harry B. NEW, Jr., and Celia New, Plaintiffs–Appellants,

v.

ASSOCIATED PAINTING SERVICES, INC., Sedco–Schlumberger Technology Corporation and Schlumberger Limited, Defendants–Appellees.

No. 87–3563.

United States Court of Appeals, Fifth Circuit.

Jan. 25, 1989.

Michael X. St. Martin, David J. Shea, Houma, La., for plaintiffs-appellants.

Timothy F. Burr, New Orleans, La., David M. Vaughn, William E. Willard, Baton Rouge, La., for Sedco–Forex.

Gary M. Zwain, Lawrence J. Duplass, New Orleans, La., for Associated Painting.

Before THORNBERRY, RUBIN, and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A sandblaster/painter foreman, injured while assigned by his land-based employer to work for a short period on a submersible drilling rig owned by an oil company, seeks damages from his employer and the vessel owner under the Jones Act,[1] and from the vessel owner under the Longshore & Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b). We affirm the summary judgment on the Jones Act claim because the worker was not more or less permanently assigned to a vessel or fleet of vessels, but we reverse the summary judgment on the § 905(b) claim because there is still a genuine issue of material fact as to whether the worker was a ship repairman.

I.

From December 16, 1984, until November 27, 1985, plaintiff Harry B. New, Jr., worked as a sandblaster/painter for defendant Associated Painting Services, Inc. (APS), an independent contractor which sends workers to owners and operators of semi-submersible drilling rigs and stationary oil platforms. New was assigned to perform his duties on a variety of vessels, rigs, and land-based facilities owned by at least eight unrelated entities, for APS itself does not own or lease any offshore rigs or vessels. We accept as true, as we must for summary judgment, New's affidavit that during the eleven months he was employed by APS, he spent about sixty percent of his time sandblasting and painting vessels.

In October, 1985, New, after a seven-day stint on a Mobil stationary platform, was assigned to work as a sandblaster and paint foreman on the PENTAGON 82, a floating semi-submersible drilling rig owned by SEDCO–FOREX, a division of Schlumberger Technology Corporation (SEDCO), where he worked for seven days

before his accident. He submitted deposition testimony that he had also occasionally worked with SEDCO's roustabouts when the weather was bad or the vessel's equipment failed. While descending from a crane boom, New slipped and was injured. After the accident, he worked for one day at the APS yard and then for four days aboard an ODECO vessel.

New and his wife sued APS and SEDCO for damages under the Jones Act. He claimed to be a Jones Act employee of APS and a borrowed Jones Act employee of SEDCO. He also asserted a second claim against SEDCO as owner of the vessel under the LHWCA. The parties stipulated that New was SEDCO's borrowed servant.

APS filed a motion for a summary judgment declaring that New was not a Jones Act seaman with respect to APS and that the LHWCA provided his sole remedy. The district court granted APS's motion, finding that New was not assigned to a fleet of vessels and therefore was not a Jones Act seaman. SEDCO then moved for summary judgment on the grounds that New was not a seaman with respect to SEDCO and that SEDCO could invoke the statutory immunity of the 1984 amendment to the LHWCA because New was employed to provide repair services. The district court granted SEDCO's motions and entered judgment in favor of the defendants, dismissing plaintiffs' complaint.

II.

New asserts that the district court erred in determining as a matter of law that he was not a seaman. Determining seaman status under the Jones Act is "an inherently factual question" generally left to the fact-finder.[2] "Nonetheless, if the requisite proof is absent, a court may decide that seaman status is lacking as a matter of law."[3] Under the familiar *Robison* test,[4] seaman status is a jury question if there is evidence that (1) the plaintiff

---

1. 46 U.S.C.App. § 688.

2. *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir.1986) (en banc).

3. *Kerr–McGee Corp. v. Ma–Ju Marine Servs., Inc.*, 830 F.2d 1332 (5th Cir.1987).

4. *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir.1959).

was "assigned permanently to a vessel ... or performed a substantial part of his work on the vessel" and (2) the work he performed assisted the vessel in accomplishing its mission or contributed to the function or maintenance of the vessel.[5] In *Braniff v. Jackson Ave.–Gretna Ferry, Inc.,*[6] we extended the requirement of assignment to a vessel to include the assignment to "an identifiable fleet of vessels,"[7] and we have decided that the employer need not be the owner or operator of the vessel or fleet of vessels.[8]

■ The crucial issue presented to the district court on seaman status was whether New performed a substantial part of his work on a "fleet" of vessels. In *Barrett v. Chevron, U.S.A., Inc.,*[9] we clarified the definition of fleet as follows:

By fleet we mean an identifiable group of vessels acting together or under one control. We reject the notion that fleet of vessels in this context means any group of vessels an employee happens to work aboard. Unless fleet is given its ordinary meaning, the fundamental distinction between members of a crew and transitory maritime workers such as longshoremen is totally obliterated.[10]

During the eleven months of New's tenure with APS, he worked aboard vessels, rigs, and land-based facilities owned by at least eight unrelated entities, located in more than one area. This group does not qualify as a fleet even if we grant for present purposes New's assertion that all of them were vessels. In *Langston v. Schlumberger Offshore Services,*[11] we held that a wire line operator who had per-

formed jobs for ten unrelated owners aboard fifteen different vessels was not a seaman for Jones Act purposes because the evidence did not suggest that these vessels were commonly controlled or had any other nexus that would support a finding that they were a fleet.[12] Similarly, New offers no evidence that the conglomeration of vessels he worked aboard were under common ownership or control.

New also asserts that the court erred in assessing his entire employment with APS in determining his Jones Act status. In *Barrett,* we held that "if the employee's regularly assigned duties require him to divide his time between vessel and land (or platform) his status as a crew member is determined 'in the context of his entire employment' with his current employer."[13] *Barrett* recognized an exception to this general rule, which New asserts applies to him, when the plaintiff "receives a new work assignment before his accident in which either his essential duties or his work location is permanently changed."[14] In such cases, the worker is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new job.[15]

■ New would have us find, as a matter of law, that because SEDCO stipulated that New was its borrowed employee, the *Barrett* exception applies to him. This ignores the predicate for the *Barrett* exception, a *permanent* change in either his duties or his job assignment. In contrast, whether a worker is a borrowed employee depends on the amount of control exerted over him,[16] not on the type of work he

**5.** *Id.* at 779.

**6.** 280 F.2d 523 (5th Cir.1960).

**7.** *Id.* at 528; *see Abshire v. Seacoast Prods.,* 668 F.2d 832 (5th Cir.1982).

**8.** *Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240, 245 (5th Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984); *Barrios v. Louisiana Constr. Materials Co.,* 465 F.2d 1157, 1164–65 (5th Cir.1972).

**9.** 781 F.2d 1067 (5th Cir.1986) (en banc).

**10.** *Id.* at 1074 (citation omitted).

**11.** 809 F.2d 1192 (5th Cir.1987).

**12.** *Id.* at 1194; *see also Lirette v. N.L. Sperry Sun, Inc.,* 831 F.2d 554 (5th Cir.1987).

**13.** *Barrett,* 781 F.2d at 1075 (*quoting Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1347 (5th Cir.1980)).

**14.** *Id.* at 1075–76.

**15.** *Id.*

**16.** *Roberts v. Williams–McWilliams Co.,* 648 F.2d 255, 262 (5th Cir.1981).

performs. The fact that an employee is borrowed by the owner of a vessel does not make him a Jones Act seaman.

■ New also contends that a genuine issue of fact exists whether his assignment to SEDCO permanently changed his essential duties or work location. To support the contention that his essential duties had changed, New offers the deposition testimony of James Perkins, a former APS vice-president, that New and others performed tasks on the PENTAGON 82, such as cleaning the galleys and washing the deck. This testimony, however, merely states that on rainy days SEDCO would assign the APS workers duties inside, such as chipping and scraping. This hardly constitutes the type of permanent shift to seaman's activities that *Barrett* contemplated.

■ To support his contention that his work location had permanently changed New offers his own deposition testimony that he was told that the SEDCO job would last through the winter or beyond. We recognize that, in ruling on a motion for summary judgment, it is not the judge's function to weigh the evidence but only to determine whether there is a genuine issue for trial. Yet, as the Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." [17] There was undisputed evidence that New's work assignments for APS had lasted between one and fifteen days, with the exception of one work assignment aboard a stationary oil platform that had lasted thirty-seven days. There was also evidence that after the accident, New worked at the APS yard and then aboard an ODECO vessel. In the face of this evidence, the trial judge was correct to find that New's assertion that his SEDCO job would last through the winter did not raise a genuine issue of material fact as to whether New was permanently assigned to the SEDCO job. In reviewing New's entire employment with APS, the district court applied the proper legal standard and correctly dismissed New's Jones Act claims against APS and SEDCO.

### III.

Seeking to avoid the exclusiveness of the employer's liability under the LHWCA,[18] New sued SEDCO under 33 U.S.C. § 905(b), which allows employees to sue the owner of a vessel for negligence. The district court, citing the provision of the 1984 amendment to the LHWCA that bars workers employed to provide ship repairing services from suing their employers, granted summary judgment in favor of SEDCO.

Section 905(b), as amended in 1984, provides in pertinent part:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, ... may bring an action against such vessel.... *If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner,* owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer.[19]

Because the parties have stipulated that at the time of the accident New was SEDCO's borrowed employee, the only question is whether New was employed to provide ship repairing services. New contends that the 1984 amendment was not meant to include workers employed to provide expected or routine maintenance to a vessel. He also asserts that he provided services other than such routine maintenance, making the section inapplicable to him.

New contends that only employees who work for shipbuilders and major repair facilities are barred from suing vessel owner-employers. Since SEDCO is neither, New claims his action is not barred by the 1984

**17.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

**18.** 33 U.S.C. § 905(a).

**19.** 33 U.S.C. § 905(b) (emphasis added).

amendment. To support this argument, New cites statements in the conference committee report that "the [Senate] bill deals with what has not been exclusive liability for *shipbuilders* under current law...."[20] and "the [Conference] substitute adopts, without change, the rule of exclusive liability for *shipbuilders* proposed in the Senate Bill."[21] Such language, according to New, indicates that Congress did not mean to cover workers engaged in expected or routine maintenance, such as the sandblasting and painting services he performed for SEDCO.

■ We do not accept New's reasoning that, since Congress mentioned only shipbuilders in the Conference statement, only those working for large ship repair firms are performing "repair" work under § 905(b). Instead, "repair" in § 905(b) must be given its ordinary meaning, "to restore to a sound or healthy state."[22] Whether the worker is employed by a large repair shop or an owner-operated welding business with but a single employee, if he is hired to restore a vessel to safe operating condition, he has been hired to perform "repairing ... services" under § 905(b). If, however, he is hired to preserve the vessel's current condition, he is performing routine maintenance not covered by the section.

■ There may be circumstances, perhaps rare, when sandblasting and painting constitute maintenance not covered by § 905(b). In this case, SEDCO claims that the PENTAGON 82 had been at sea for many months, and "the paint on the entire vessel had severely deteriorated and various parts of the structure were rusty." If this statement were properly supported, we would find that New's sandblasting and paint work constituted repair under § 905(b). In its motion for summary judgment, however, SEDCO did not present

such evidence, but relied on the uncontested fact that New was hired as a painter/sandblaster/foreman. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[23]

Based on the record before us, there is a genuine issue of material fact whether New was hired to do repair or routine maintenance work. Accordingly, we reverse the district court's grant of summary judgment on New's § 905(b) claim against SEDCO and remand for proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

**20.** *Joint Explanatory Statement of the Committee of Conference,* H.Conf.R. No. 1027, 98th Cong., 2d Sess. 23, *reprinted in* 1984 U.S. Code Cong. & Admin.News 2734, 2773 (emphasis added).

**21.** *Id., reprinted in* 1984 U.S. Code Cong. & Admin.News at 2774 (emphasis added).

**22.** Webster's Ninth New Collegiate Dictionary (1987).

**23.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.Pro. 56).