[No. A074144. First Dist., Div. Two. Sept. 16, 1997.]

ROBERT JONES, Plaintiff and Appellant, v.
DUTRA CONSTRUCTION COMPANY, Defendant and Respondent.

**COUNSEL**

McGuinn, Hillsman & Palefsky and John R. Hillsman for Plaintiff and Appellant.

Kelly, Cox, Wootton, Griffin, Gill & Sherburne and Richard C. Wootton for Defendant and Respondent.

OPINION

KLINE, P. J.—Robert Jones appeals from a summary judgment granted in favor of respondent, Dutra Construction Company. The trial court found appellant's action for negligence barred by section 905(b) of title 33 of the United States Code, part of the federal Longshore and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq.). Appellant urges the trial court erred in finding that provision applied to him.

STATEMENT OF THE CASE AND FACTS

Respondent is a marine construction firm engaged in business activities including dredging, harbor work, pier and wharf construction, and levee construction. It has an in-house equipment division that maintains, repairs and modifies its own equipment. Respondent owns and operates a fleet of construction vessels, including barges, dredges, tugs and scows. Respondent does not build or repair vessels for outside customers, perform shipbreaking, own a dry dock, or operate a shipyard.

Appellant, whose working life began before 1958, has held a number of jobs, including at a plywood peeling plant, at a stud mill, as a mechanic, as proprietor of a tire store, and as a construction worker. On October 22, 1994, appellant was one of a number of welders dispatched from the Local 3 union hall to work for respondent on the modification of two scows to accommodate toxic waste from a dredging operation. Appellant had never worked for respondent before. The project involved fabricating six T-shaped bulkheads for each scow and was to last at most two weeks. The T-sections were fabricated on shore and then welded onto the scows. The T-sections were temporary modifications to the scows, removed after the completion of the dredging operation. On October 30, appellant was welding on board one of the scows when he stepped backwards, fell into an open access hole and was injured.

On January 27, 1995, appellant filed a complaint against respondent entitled "Harbor Worker's Complaint for Personal Injury Due to Vessel Owner Negligence." Appellant alleged that he was employed by respondent as a "harbor worker and rigger, in a capacity comprising 'maritime employment' within the meaning of Sections 2, 3, and 5 of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. sections 902, 903, and 905" and was injured while aboard respondent's scow upon the navigable waters of the United States. He alleged a single cause of action for vessel owner negligence "under the General Maritime Law, as modified by the provisions of Section 5(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Section 905[.]"

On April 4, 1995, respondent filed its answer to the complaint, generally denying each of the allegations of the complaint and raising six affirmative defenses: failure to state a cause of action, contributory negligence, comparative negligence, failure to mitigate, Proposition 51, and state workers' compensation as exclusive remedy.

On February 26, 1996, respondent moved for summary judgment, urging the action was barred by section 905(b), part of the Longshore and Harbor Workers' Compensation Act (33 U.S.C. § 905(b)). Appellant opposed the motion on the merits.

After a hearing on April 5, on April 19 the court filed its decision granting the motion for summary judgment. The court found "as a matter of law, [appellant's] claim is barred under 33 U.S.C. § 905(b) and *Heise* v. *The Fishing Company of Alaska* [(9th Cir. 1996) 79 F.3d 903] and [respondent's] Separate Statement of Undisputed Facts, Numbers 1 through 6."

Appellant filed a timely notice of appeal on April 26, 1996.

DISCUSSION

The Longshore and Harbor Workers' Compensation Act (LHWCA) provides for the payment of compensation for the disability or death of an "employee" resulting from an injury occurring upon the navigable waters of the United States, including adjoining areas "customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." (33 U.S.C. § 903(a).)[1] An "employee" is defined in the statute as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, any harbor-worker including a ship repairman, shipbuilder, and ship-breaker" and excluding specified individuals (such as those employed exclusively to perform office clerical, secretarial and security work; employed by a club, camp, recreational operation, restaurant, museum, or retail outlet; and others not engaged in maritime occupations or not exposed to maritime hazards even though employed by maritime employers or working on or adjacent to navigable waters). (§ 902(3); see 1984 U.S. Code Cong. and Admin. News, pp. 2736-2737.)

Section 905(a), part of the LHWCA, provides that an employer's liability under the act is its exclusive liability unless it fails to secure payment of compensation as required by the act. Section 905(b) provides: "In the event of injury to a person covered under this chapter caused by the negligence of

---

[1]All statutory references will be to the LHWCA, 33 United States Code section 901 et seq., unless otherwise specified.

a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. *If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer.* The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this Act." (Italics added.)

■ As a preliminary matter, appellant claims summary judgment was improperly granted because respondent never raised the bar of section 905(b), in its answer. Respondent counters that since appellant's only cause of action was for vessel owner negligence, its first affirmative defense of failure to state a cause of action was adequate to raise the section 905(b) issue. It further urges appellant was given notice of its intention to argue this issue by the summary judgment motion and waived any objection to the insufficiency of the answer by failing to raise such a challenge in the trial court.

As noted above, appellant responded to the summary judgment motion on the merits, never claiming respondent's answer was defective or insufficient to support the summary judgment motion. "In this circumstance it would be unfair to ground a ruling on the inadequacy of the pleadings *if* the pleadings, read in the light of the facts adduced in the summary judgment proceeding, give notice to the plaintiffs of a potentially meritorious defense. If plaintiffs had openly challenged the adequacy of defendants' pleading in the trial court, and defendants tendered a potentially meritorious unpled defense, it is likely that they would have been allowed to amend their answer. (See 5 Witkin, Cal. Procedure [(3d ed. 1985)] Pleading, §§ 1121-1164, pp. 537-587.) For that reason we deem plaintiffs' failure to challenge the sufficiency of the pleading of affirmative defenses as a partial waiver of the right to rely upon these defects on appeal. [¶] We do so for reasons analogous to the appellate doctrine of theory of trial. ■ 'Where the parties try the case on

the assumption that a cause of action is stated, that certain issues are raised by the pleadings, that a particular issue is controlling, or that other steps affecting the course of the trial are correct, neither party can change this theory for purposes of review on appeal.' (9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 316-323, pp. 327-334.)" (*FPI Development, Inc.* v. *Nakashima* (1991) 231 Cal.App.3d 367, 385 [282 Cal.Rptr. 508].) ▆ In the present case, the parties litigated the summary judgment motion with no suggestion respondent's reliance upon the bar of section 905(b) was improper. Appellant obviously had notice of the defense upon which respondent was relying and, by so litigating the merits of the summary judgment motion, waived any right to claim on appeal that the answer was defective.

▆ Appellant argues that respondent may not rely upon the bar of section 905(b), because this provision, enacted as part of the 1984 amendments to the LHWCA, was intended to protect employers engaged in the business of shipbuilding and not other vessel owning employers. Appellant's attorney asserts, as he did in the trial court, that his law firm helped write the 1984 amendments to the LHWCA and knows their history and purpose first hand. He offers two excerpts from a United States Senate Report concerning the amendments, each of which offers an illustration of how the exemption created in section 905(b) would operate and both of which concern shipyards. In the first example, the report states an employee injured on a vessel being newly constructed by a shipyard would not be permitted to maintain an action in negligence against the shipyard employer. In the second example, an employee injured on a vessel owned by a third party and being repaired by a shipyard would not be able to bring a negligence action against the shipyard employer. (Sen.Rep. No. 98-81, 2d Sess., p. 32 (1984).)

Despite the examples chosen by the authors of the report, the language of section 905(b) provides absolutely no basis for concluding that provision bars negligence suits against *only* shipyard employers. The critical language of section 905(b) states: "If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer . . . ." This language focuses on the purpose for which the employee was employed, not on the business of the employer. While the language clearly *includes* shipyard employers (whether the actual owner of the vessel or owner pro hac vice), it simply does not *exclude* other employers. Cases applying the section 905(b), bar have not limited its reach to employees of shipyard employers. Indeed, the Fifth Circuit in *New* v. *Associated Painting Services, Inc.* (5th Cir. 1989) 863 F.2d 1205, specifically rejected a claim, based upon legislative history of the

1984 amendments, that the section 905(b) bar applied only to employees of shipbuilders and major repair facilities.[2] *New*, which concerned whether the activities performed by the employee constituted "repair" within the meaning of section 905(b), stated, "Whether the worker is employed by a large repair shop or an owner-operated welding business with but a single employee, if he is hired to restore a vessel to safe operating condition, he has been hired to perform 'repairing . . . services' under § 905(b)." (863 F.2d at p. 1210.) In *Heise* v. *Fishing Co. of Alaska, Inc.* (9th Cir. 1996) 79 F.3d 903, the employer owned and operated several fishing vessels; the opinion gives no indication it also ran a shipyard.

Appellant next contends the trial court erred in considering the nature of the work in which appellant was engaged at the time of his injury rather than the nature of his occupation as shown by his lifelong employment history. According to appellant, an employee's status under the LHWCA must be determined under an "occupational test" (*P.C. Pfeiffer Co., Inc.* v. *Ford* (1979) 444 U.S. 69, 80 [100 S.Ct. 328, 336, 62 L.Ed.2d 225]), " 'by reference to his overall employment.' " (*Schwabenland* v. *Sanger Boats* (9th Cir. 1982) 683 F.2d 309, 311-312.)

■ Appellant is correct that applicability of the bar of section 905(b), may not be determined by focusing solely on the employee's activity at the moment of injury. Thus, for example, when a worker's principal duty for his employer is not repair work, he is not subject to the section 905(b), bar even if he is performing repair work at the moment of injury. (See, *Gay* v. *Barge 266* (5th Cir. 1990) 915 F.2d 1007, 1011.) *Gay* explained, "When classifying an employee for purposes of determining whether a suit under § 905(b) is barred, we look not only at what the employee was doing at the moment he was injured. We also look at whether the employee 'regularly performs some portion of what is indisputably [ship-repair] work,' or has been assigned for an appreciable period of time to do 'substantial [ship-repair] work . . . even though his assignment to it is not "permanent," ' . . . If the employee's permanent duties, or his interim duties over an appreciable period, are such that he would be a covered ship repairer within the meaning of § 902(3) of the LHWCA, then he is barred from bringing suit against his employer under § 905(b). [¶] . . . [¶] . . . The Supreme Court's longstanding recognition that the LHWCA 'focuses primarily on occupations' supports our conclusion

[2] *New* was unpersuaded by "statements in the conference committee report that 'the [Senate] bill deals with what has been exclusive liability for *shipbuilders* under current law . . .' and 'the [Conference] substitute adopts, without change, the rule of exclusive liability for *shipbuilders* proposed in the Senate Bill.' " (*New* v. *Associated Painting Services, Inc. supra,* 863 F.2d at p. 1210, fn. omitted, quoting J. Explanatory Statement, Com. Conf., H.Conf.Rep.No. 1027, 98th Cong., 2d Sess., p. 23, reprinted in 1984 U.S. Code Cong. & Admin. News, at pp. 2734, 2773-2774.)

that Congress intended to bar suits only by workers in the occupations specified. Focusing solely on the employee's activity at the time of injury might bar suits by a whole host of workers in other maritime occupations who are injured while temporarily performing repair work." (915 F.2d at p. 1010, fns. omitted.)

■ Appellant's briefs provide no support, however, for his assertion that the occupational test to be employed in determining coverage under the LHWCA looks to the nature of an employee's occupation over his entire lifetime of employment rather than the nature of his occupation for the employer by whom he is employed at the time of injury. Thus, in *Gay*, the plaintiff was injured while attempting to load a pump onto a barge. The plaintiff was classified as a truck driver and light equipment operator, but his duties included loading and unloading barges "from time to time" and he was "occasionally" assigned to pump water out of barges. Aside from the question whether barge-pumping could be considered "repair" work (as opposed to routine maintenance), the Fifth Circuit held a factual question was presented whether the plaintiff's "principal duty" was repair work. (915 F.2d at p. 1011.) The issue concerned the nature of the plaintiff's usual activities *for the employer being sued*; the court gave no consideration to any other aspect of the plaintiff's job history.

Similarly, the Supreme Court's reference to an "occupational test" in *P.C. Pfeiffer Co., Inc.* v. *Ford, supra,* 444 U.S. at page 80 [100 S.Ct. at page 336], served to distinguish the employee's occupation from the location in which the injury occurred. The court rejected an argument that workers were only engaged in "maritime employment" (and therefore covered by the LHWCA) if upon the day of their injury they could have been assigned to perform work upon navigable waters. Instead, the court held employees whose injuries occurred on land adjoining navigable waters were covered by the LHWCA because they were engaged in the type of work performed by longshore workers transferring goods between ship and land transportation. The "occupational test" referred to in *Pfeiffer* attempted to effectuate congressional intent to extend coverage to workers engaged in traditional maritime employment regardless whether their injuries occurred upon navigable waters, without extending coverage to all workers who happened to be employed in areas adjoining navigable waters. (444 U.S. at pp. 79-83 [100 S.Ct. at pp. 335-338].)

In *Schwabenland* v. *Sanger Boats, supra* 683 F.2d 309, 311-312, the Ninth Circuit noted that the benefits review board had denied a claim under the LHWCA because the employee, "by reference to his overall employment," "had not spent a substantial portion of his work time performing maritime

duties." The court rejected the "substantial portion" test in favor of the "some portion" test used by the United States Supreme Court, finding the injured employee was a maritime employee because some portion of his overall working time was spent performing maritime operations. Again, the "overall employment" considered in this case was employment for the employer for whom the employee was working at the time of injury.

In *Heise* v. *Fishing Co. of Alaska, Inc., supra,* 79 F.3d 903, the bar of section 905(b) was applied to a temporary laborer who was hired as an " 'assistant engineer' " for an approximately month-long period to perform work including rebuilding the vessel's engine and cleaning fuel tanks. The Ninth Circuit considered the nature of the employee's work on this job without reference to his preceding employment history.

Indeed, appellant's suggestion that he could not be considered a shipbuilder or ship repairer because his job for respondent was the first involving maritime activity in a long employment history could lead to absurd results in application. As respondent points out, if the test required determination of the employee's occupation by reference to the majority of his or her jobs over a lifetime, a person who had worked repairing ships for several years might be found not to be a ship repairer if the person had previously held a different type of job for many years. Rather, an employee's rights and limitations under the LHWCA with respect to the employer he or she seeks to sue for vessel owner negligence should be measured by the nature of the employee's employment for that employer.

For the first time at oral argument, appellant suggested support for his argument that the relevant occupational test depends on the nature of an employee's occupation over his lifetime of employment may be found in *Northeast Marine Terminal Co.* v. *Caputo* (1977) 432 U.S. 249 [97 S.Ct. 2348, 53 L.Ed.2d 320] (*Caputo*). This case considered the 1972 amendments to the LHWCA, which extended shoreward the areas covered by the legislation (the "situs" requirement) and limited the class of workers covered by the act to those engaged in "maritime employment" (the "status" requirement). (*Id.,* at pp. 263-264 [97 S.Ct. at pp. 2356-2357].) With regard to the latter, *Caputo* stated that the LHWCA "focuses primarily on occupations— longshoreman, harbor worker, ship repairman, shipbuilder, shipbreaker" and was intended to ensure workers in those occupations would be covered throughout their employment. (*Id.,* at p. 273 [97 S.Ct. at p. 2362].) *Caputo* held that employees clearly engaged in longshore activities was covered by the LHWCA.

*Caputo* does not, of course, address the section 905(b) bar with which we are concerned, as the opinion predates the amendments by which this

provision was added to the LHWCA. Nor does it support appellant's lifetime employment history test. Rather, like the other cases we have discussed, *Caputo* determined the employees' occupations by reference to the nature of their work around the time of injury. Of the two injured workers considered in the case, one worked for a single employer and the other worked for multiple employers, always at longshoring activities. In light of the factual circumstance of this latter worker, *Caputo* might, by inverse reasoning, be taken to suggest that an employee who only temporarily performs the type of work contemplated by section 905(b) is not engaged in the relevant occupation and therefore is not covered by the provision. This interpretation, however, would be an extension of *Caputo*, which did not purport to address the situation of a "temporary" maritime worker. It would also be illogical. The bar of section 905(b) serves to protect certain employers from suits by employees performing enumerated services. There is no reason a given employer should be liable to tort claims by one employee and not to another if the employees perform identical work for the employer but one performs that work exclusively or primarily in a maritime context and the other does not.

The occupational test for coverage under the LHWCA has been interpreted to mean that an employee whose employment history consists almost entirely of maritime work is covered by the act for an injury sustained during a temporary, nonmaritime job. (*McGray Const.* v. *Director, Office of Workers Comp.* (9th Cir. 1997) 112 F.3d 1025, 1028, 1031.) The converse, however, is not true: *McGray* holds that an employee is also considered covered by the LHWCA if he or she is engaged in maritime work at the moment of injury, apparently without regard to whether the employee ordinarily engages in maritime work. (*Id.*, at p. 1028.) In other words, *McGray* suggests an employee can use his or her occupational history to bring him or herself within the coverage of the act; but a nonmaritime occupational history cannot be used to preclude coverage under LHWCA. It necessarily follows that a nonmaritime occupational history cannot be used to evade the bar of section 905(b). Where, as here, an employee is engaged in maritime employment solely by virtue of work within the meaning of the section 905(b) bar, the employee may not avoid that bar by claiming his or her overall occupation is not that of a shipbuilder, repairer or breaker.

■ This brings us to appellant's remaining contention, that the work he performed for respondent was not "shipbuilding" or "repairing" within the meaning of the LHWCA. In *Heise* v. *Fishing Co. of Alaska, Inc, supra*, 79 F.3d at page 907, the Ninth Circuit adopted the definition of "repair" announced by the Fifth Circuit in *New* v. *Associated Painting Services, Inc.*, *supra*, 863 F.2d at page 1210: " ' "[R]epair" in § 905(b) must be given its

ordinary meaning, "to restore to a sound or healthy state." . . . [I]f [the worker] is hired to restore a vessel to safe operating condition, he has been hired to perform "repairing . . . services" under § 905(b). If, however, he is hired to preserve the vessel's current condition, he is performing routine maintenance not covered by the section.' "

 Appellant urges he was not repairing respondent's scow because the scow was not in an unsound condition before the T-sections were added. The modification to the scow was necessary, however, to make it sound for the purpose for which it was about to be used. It was thus analogous to the definition of "repair" described above. Clearly, the work in which appellant was engaged was not "routine maintenance" to "preserve the vessel's current condition."[3]

Alternatively, while the trial court did not believe the activity in which appellant was engaged constituted shipbuilding, in our view it could be encompassed by that term. Shipbuilding is the "occupation or business of constructing ships." (Webster's New Internat. Dict. (3d ed. 1961) p. 2096.) "Construct" is defined as "to put together (as constituent parts) so as to form, make, or create something: BUILD, FABRICATE." (*Id.*, at p. 489.) "Build" is "to form by ordering and united materials by gradual means into a composite whole." (*Id.*, at p. 291.) "Fabricate" is "to form by art and labor" or "to form into a whole by uniting parts: CONSTRUCT, BUILD." (*Id.*, at p. 811.) In the present case, appellant was engaged in fabricating steel bulkheads that were welded onto the scow, creating a newly equipped vessel.

In *Garret* v. *Dean Shank Drilling Co., Inc.* (5th Cir. 1986) 799 F.2d 1007, the plaintiff was injured while working on a project adding a superstructure, fixtures, and appurtenances (such as crew's quarters, kitchen, derrick, stairs and navigation lights) to a flat-decked barge that had been purchased with the intent to add such structures to enable it to function as a drilling rig. The court held the plaintiff had been hired to provide shipbuilding services and so was subject to the bar of section 905(b). We can find no meaningful distinction between *Garret* and the present case in the facts that the barge

---

[3]Appellant argues he could not have been "repairing" respondent's scow because "real 'vessel repairs' " must be inspected by the Coast Guard and/or American Bureau of Shipping before the vessel's return to sea and evidence was introduced to show appellant's work was never inspected. Appellant cites a federal regulations that require "[n]o repairs or alterations affecting the safety of the vessel with regard to the hull, machinery, or equipment shall be made without the knowledge of the Officer in Charge, Marine Inspection" (46 C.F.R. § 91.45-1 (1996)) and another requiring inspection before alterations or repairs involving welding and other "fire-producing actions" in areas used for carrying or close to "combustible liquids or chemicals." (46 C.F.R. § 91.50-1 (1996).) He cites no authority (and offered no evidence) for the proposition that all repairs to a vessel require Coast Guard inspection or that nothing that does not rise to a level requiring such inspection can be considered a repair.

had not been used for other purposes before the additions were made or that the additions were more substantial than those in the present case. In both situations, the work being performed was similar: Modifying an existing vessel.

Appellant urges the term "shipbuilding" necessarily refers to new construction. While the cases appellant cites factually involve the initial construction of ships, they do not hold that *only* such initial construction can constitute shipbuilding. (*Dravo Corp.* v. *Maxin* (5th Cir. 1976) 545 F.2d 374, 380; *Reynolds* v. *Ingalls Shipbuilding Div., Litton* (5th Cir. 1986) 788 F.2d 264, 272; *Richendollar* v. *Diamond M Drilling Co., Inc.* (5th Cir. 1987) 819 F.2d 124, 126, fn. 5.) In *McKinley* v. *All Alaskan Seafoods, Inc.* (9th Cir. 1992) 980 F.2d 567, 571, in the context of determining that the hull of an oil drilling ship undergoing a multimillion-dollar conversion to use as a seagoing fish and crab processing ship was not in navigation for purposes of the Jones Act, the Ninth Circuit noted the conversion was "more analogous to new construction than repair or overhaul." *McKinley* thus demonstrates that modification of an existing vessel can constitute "shipbuilding."

■ In interpreting the terms of a statute, we strive to achieve an interpretation that will effectuate the purpose of the legislation and will not lead to absurd results. (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1166 [278 Cal.Rptr. 614, 805 P.2d 873]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) ■ Whether the work in which appellant was engaged is viewed as "repair" or "building," it is apparent that it was of a nature similar to repair, building or breaking a vessel: It was not routine maintenance and involved a specific repair or alteration of the vessel. Section 905(b) allows pursuit of a negligence action against a vessel owner by any "person covered under this chapter"—that is, a maritime worker who is not a crew member (§ 902(3))—*except* one "employed to provide shipbuilding, repairing, or breaking services." This exception distinguishes shipbuilders, repairers and breakers from longshore workers and others such as harbor workers who might provide routine maintenance. There is no imaginable reason Congress would have wished to preclude negligence actions by workers employed to build, repair or break ships but allow such actions by workers employed to modify or alter an existing vessel.

■ Summary judgment must be granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); *Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719].) An appellate court reviews the trial court's decision to grant summary

judgment de novo. (*Villa* v. *McFerren, supra,* 35 Cal.App.4th at p. 741.) Under Code of Civil Procedure section 437c, subdivision (o)(2), "[a] defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto."

 In the present case, while the parties disputed whether the type of activity in which appellant was engaged when he was injured constituted shipbuilding or repair within the meaning of section 905(b), there was no factual dispute as what appellant was doing. The question whether his work fabricating the T-sections and welding them to the scow constituted shipbuilding or repair was a legal one. Respondent's evidence demonstrated that appellant was at the time of his injury engaged in activities within the bar of section 905(b). Appellant offered no evidence to raise a triable issue of fact on this point. We conclude the trial court correctly granted summary judgment as appellant's suit was barred by the provisions of section 905(b).

The judgment is affirmed.

Haerle, J., and Ruvolo, J., concurred.