[No. B138546. Second Dist., Div. Four. Oct. 30, 2000.]

DENNY J. BEROIZ et al., Plaintiffs and Appellants, v.
TONY WAHL et al., Defendants and Respondents.

486

## COUNSEL

Daar & Newman and Samuel T. Rees for Plaintiffs and Appellants.

Alder & Ring and Bart I. Ring for Defendants and Respondents Tony Wahl and Therese Marian.

Law Offices of Craig D. Weinstein and Craig D. Weinstein for Defendant and Respondent Elena Gladys Alamo Janine.

## OPINION

**CURRY, J.**—In a defamation action by appellants Denny J. Beroiz, Robert Delmer, and Samuel T. Rees, the trial court granted motions for summary judgment by defendants and respondents Elena Gladys Alamo Janine, Therese Marian, and Tony Wahl. We affirm.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 1997, appellants filed their complaint against respondents, as well as Charlotte Boddeker, George Boddeker, Barbara Smith, Eugene

Smith, and Shirley Tate. The complaint alleges the following facts: Appellants, and defendants, including respondents, were residents of a condominium complex in Mexico named "Condominio Las Gaviotas." Appellants were members of the homeowners association, and from March 1991 to March 1996, they served for periods on a vigilance committee that oversees the complex's professional administrator. During this period, defendants, including respondents, violated the homeowners association's rules, requiring action by appellants as members of the vigilance committee. In response, defendants entered into a conspiracy to defame appellants. Respondents made defamatory criminal accusations against appellants, the most recent of which was filed in 1997. Furthermore, defendants, including respondents, encouraged a Mexican national to file a false and defamatory claim against the condominium complex, and in 1997, they published defamatory letters signed by the Boddekers, the Smiths, and Tate, to members of the homeowners association.

Appellants settled their claims against all defendants except respondents. On or about September 10, 1999, respondents filed motions for summary judgment or adjudication, contending, inter alia, that they had not conspired to defame appellants, and that their conduct was privileged under Civil Code section 47.

On summary judgment, Alamo[1] submitted evidence that appellants had abandoned their allegations of defamatory conduct against her, except for the allegation that she had filed defamatory criminal accusations, assisted by Wahl and Marian. Regarding this allegation, Alamo contended that her conduct was nondefamatory and privileged.

Alamo submitted evidence supporting the following version of the pertinent events: Delmer, Beroiz, and Rees were not on the vigilance committee after March 1996. Subsequently, the complex's administrator denied Alamo gas and gardening services, and she was denied entry to the complex because the administrator, upon the vigilance committee's instructions, refused to issue a sticker to her identifying her as a resident. Alamo consulted with a Mexican attorney, who advised her that she had a sufficient basis for alleging the crime of dispossession under Mexican law, and she filed a complaint with the local district attorney's office on August 7, 1996. Alamo did not discuss the making of this complaint with Wahl and Marian, and she did not know the members of the vigilance committee when she made it. The complaint itself states that the administrator, in conjunction with unnamed

---

[1]Although appellants' complaint identifies Alamo as "Elena Gladys Alamo Janine, aka Elena Gladys Alamo," the parties consistently refer to her as "Alamo." We therefore adopt this usage.

members of the complex's board of directors, had dispossessed her by denying services and access to her residence.

Alamo also joined in the motions filed by Wahl and Marian. These motions, which are substantially identical, denied that Wahl and Marian had engaged in any of the conduct alleged in appellants' complaint, with the exception of Alamo's complaint to the local district attorney's office. Regarding Alamo's complaint, Wahl and Marian contended that they had done nothing more than provide testimony upon the orders of the local district attorney, and that this conduct was privileged.

In support of these contentions, Wahl and Marian submitted evidence that they had no involvement with the letters signed by the Boddekers, the Smiths, and Tate, that they were wholly unaware of a false claim by a Mexican national against the complex, and that they had never filed any criminal accusations against appellants. Furthermore, they submitted evidence that Alamo did not ask them to testify, and that the local district attorney made the decision to have them testify.

In response, appellants conceded that their claims against respondents did not rest on the letters signed by the other defendants, and they otherwise focused their opposition on the allegations regarding Alamo's criminal accusations. They contended, inter alia, that the pertinent privileges under Civil Code section 47 do not shield conduct in Mexico. Alternatively, appellants argued that there was evidence that malice had motivated respondents' conduct, thus taking it outside the only applicable privilege.

Appellants submitted a declaration from Rees, an attorney, who stated that the condominium complex is located in an area of Mexico in which direct foreign ownership of real property is prohibited. As a result, American residents of the complex generally hold their property as beneficiaries of a master trust, which is the owner of record. None of the parties to appellants' action are Mexican nationals or directly own their property. Rees, along with the other appellants, had served on the vigilance committee for periods between March 1991 to March 1996. This committee's principal function is to oversee the complex's professional administrator, who is elected annually by the complex's members.

Rees's declaration states that while he served on the vigilance committee, it responded to misconduct by Alamo, Wahl, and Marian. Alamo is not a beneficiary of the trust. Because she has refused to pay overdue fees to the homeowners association and she has built a home without approval, the trustee refuses to transfer a beneficial interest to her. In 1994, the vigilance

committee took legal action to secure demolition of her home. In the same year, the vigilance committee discharged then administrator Roberto Mendoza, who is respondents' friend. Wahl and Marian, along with others, seized the homeowners association's office by force and held it for several months.

Rees's declaration further states that, as a result of these incidents, Alamo, Wahl, and Marian developed animosity towards appellants. In 1995, Alamo filed a dispossession complaint against appellants, but the charges were dismissed because she lacked supporting witnesses. After Alamo filed her complaint on August 7, 1996, Wahl and Marian voluntarily appeared and gave testimony. On August 14, 1996, the local district attorney determined that there was insufficient evidence to support any further investigation. Later, during discovery in the present action, Alamo admitted to Rees that she had "enlisted the aid of Marian and Wahl in supporting her criminal charges," and respondents were unable to produce written orders to Marian and Wahl to appear before the local district attorney.

Following a hearing, the trial court granted the motions, concluding that respondents' conduct was subject to the absolute privilege under Civil Code section 47. Judgment was filed on November 8, 1999.

### DISCUSSION

Appellants contend that the trial court erred in granting summary judgment. We disagree.

### A. *Summary Judgment*

Summary judgment is subject to de novo review. (*Edward Fineman Co. v. Superior Court* (1998) 66 Cal.App.4th 1110, 1116 [78 Cal.Rptr.2d 478].) Generally " '[r]eview of a summary judgment motion by an appellate court involves application of the same three-step process required of the trial court. [Citation.]' " (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1662 [42 Cal.Rptr.2d 669].) The three steps are (1) identifying the issues framed by the pleadings, (2) determining whether the moving party has made an adequate showing that negates the opponent's claim, and (3) determining whether the opposing party has raised a triable issue of fact. (*Ibid.*)

These steps reflect a series of burden shifts. A defendant moving for summary judgment has the burden of "negat[ing] a necessary element of the plaintiff's case, and demonstrat[ing] that under no hypothesis is there a

material issue of fact that requires the process of a trial. [Citation.]" (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) To do that, the defendant may rely either on affirmative evidence or discovery responses of the plaintiff showing the absence of evidence necessary to establish at least one essential element of the plaintiff's case. (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 589-590 [37 Cal.Rptr.2d 653].) Once the defendant carries this substantive burden, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to the plaintiff's case. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].) Any doubts as to whether there are any triable issues of fact are to be resolved in favor of the party opposing summary judgment. (*Ibid.*)

## B. *Privilege*

The key issues presented here concern the application of the absolute and qualified privileges in Civil Code section 47 to respondents' conduct in connection with Alamo's complaints of dispossession.[2]

■ Privilege is an affirmative defense to a claim of defamation. (5 Witkin, Summary of Cal. Law (9th ed. 1988 & 2000 supp.) Torts, §§ 498, 519.) The so-called absolute privilege in subdivision (b) of section 47 provides broad protection to participants in litigation and other official proceedings.[3] (5 Witkin, Summary of Cal. Law, *supra*, §§ 498-517.) Generally, this privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].)

As our Supreme Court explained in *Silberg v. Anderson, supra,* 50 Cal.3d 205, the absolute privilege promotes several goals important to our system of justice, including "ensuring free access to the courts, promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation," and thus it has been called " 'the backbone to an effective and smoothly operating judicial system.' " [Citation.]" (*Id.* at pp. 214, 215, quoting *McClatchy Newspapers, Inc. v. Superior Court* (1987) 189 Cal.App.3d 961, 970 [234 Cal.Rptr. 702].) Accordingly, "[t]he only exception" to its application "to tort suits has been for

---

[2]All further statutory citations are to the Civil Code, unless otherwise indicated.

[3]Section 47, subdivision (b) provides that "[a] privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding, (3) in any other official proceeding authorized by law . . . ."

malicious prosecution actions. [Citations.]" (*Silberg v. Anderson, supra,* at p. 216.)

▆ The so-called qualified privilege in subdivision (c) of section 47 protects communications made without malice to protect a recognized interest. (5 Witkin, Summary of Cal. Law, *supra,* Torts, §§ 519-530.) This privilege applies to any communication, "without malice, to a person interested therein, (1) by one who is interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." (§ 47, subd. (c).) This privilege protects good faith, well-intended communications serving significant interests. (See Rest.2d Torts, § 603, com. a, pp. 291-292.)

▆ The initial issue before us is whether these privileges, as codified in section 47, apply to conduct in Mexico.[4] This appears to be a question of first impression. Although there is relatively little case authority relevant to this question in other jurisdictions within the United States, the cases that we have found have uniformly held that similar privileges apply to foreign proceedings and communications.

---

[4]As a threshold matter, appellants contend that Wahl and Marian could not rely on privilege as a defense on summary judgment because their answers do not assert this defense. However, Wahl and Marian argued in their motions for summary judgment that they could rely on this defense even though their answers had not asserted it. Appellants did not dispute this contention before the trial court, and they addressed Wahl's and Marian's assertion of privilege on its merits. Accordingly, appellants have waived this contention. (*Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 346, fn. 5 [87 Cal.Rptr.2d 856]; *Jones v. Dutra Construction Co.* (1997) 57 Cal.App.4th 871, 876-877 [67 Cal.Rptr.2d 411].)

Appellants also contend that Alamo, unlike Wahl and Marian, failed to obtain the trial court's permission to file her motion for summary judgment within 30 days of the trial date. Appellants contend that this error, which they first raised at the hearing on respondents' motions for summary judgment, is jurisdictional, and requires reversal. We are not persuaded. Code of Civil Procedure section 437c, subdivision (a) provides that a summary judgment motion "shall be heard no later than 30 days before the date of trial, *unless the court for good cause orders otherwise.*" (Italics added.) Because the trial court may permit summary judgment motions to be filed within the 30-day limit, and it determined that Wahl and Marian had stated good cause on this matter, we conclude that the trial court would, in all likelihood, have granted Alamo an order allowing her to file her motion if she had requested one. Accordingly, the error here, if any, is not jurisdictional. (Cf. *Jones v. Dutra Construction Co., supra,* 57 Cal.App.4th at pp. 876-877 [contention of procedural error waived because appellants failed to bring error to attention of trial court, which probably would have permitted correction of error].) Furthermore, assuming that the trial court erred in ruling on Alamo's motion for summary judgment in the absence of an order permitting her to file this motion, appellants have failed to show reversible error. Appellants responded fully to Alamo's motion, and they have not suggested that the trial court's error denied them any opportunity to enhance their opposition. Moreover, as we explain below, appellants failed to raise a triable issue regarding Alamo's motion, and thus nothing indicates that they might have prevailed at trial on their claims against Alamo.

In *Vanderkam v. Clarke* (S.D.Tex. 1998) 993 F.Supp. 1031, 1031-1032, the executive director of a scandal-ridden Irish corporation brought an action against a lawyer appointed by the High Court of Ireland to investigate the corporation, alleging that the lawyer's communication of his official findings had defamed the director. The district court in *Vanderkam* held that the lawyer's conduct was absolutely privileged, reasoning that the lawyer had published his findings as ordered by the Irish court, and that under Texas law, lawyers are privileged to publish otherwise defamatory material in connection with a judicial proceeding. (*Id.* at p. 1032.)

Similarly, in *Sorge v. City of New York* (1968) 56 Misc.2d 414, 415 [288 N.Y.S.2d 787, 790-791], two police officers in New York City testified, at the request of the State Department of the United States, at a hearing before an Italian judge regarding criminal activity in Italy. When the officers were sued for defamation, the court in *Sorge* held that their testimony during the Italian judicial proceeding was absolutely privileged under New York law. (288 N.Y.S.2d at pp. 798-799.)

Finally, in *Bakhshandeh v. American Cyanamid Company* (S.D.N.Y. 1962) 211 F.Supp. 803, 804, an Iranian citizen sued an American corporation for defamation, alleging, inter alia, that the corporation's employees had made defamatory remarks to an Iranian governmental official in Tehran. Citing primarily New York law, the district court in *Bakhshandeh* determined that these remarks to the Iranian official were subject to a qualified privilege, and thus they were not actionable absent proof of malice. (*Id.* at pp. 808-809.)

The conclusion that the section 47 privileges may properly shield conduct in Mexico finds additional support in the policies underlying these privileges. Although foreign judicial systems differ from California's judicial system, applying the privileges to proceedings and communications in foreign countries tends to promote these policies. Generally, "[a] foreign judgment will be res judicata in an American court if it has that effect in its country of rendition, and if it meets the American standard of fair trial before a court of competent jurisdiction." (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 299, p. 846.) Thus, applying the absolute privilege to fair judicial proceedings in foreign countries encourages American citizens in these countries to resolve disputes in the courtroom, rather than by self-help, promotes the finality of judgment, and limits derivative tort litigation in California courts. Furthermore, applying the qualified privilege to American citizens in foreign countries protects their good faith communications regarding their legitimate interests.[5]

█ The next question presented is the extent to which respondents' conduct falls within the absolute privilege. Generally, the absolute privilege

---

[5]Appellants contend that the absolute privilege should never be applied to foreign proceedings, arguing that the contrary holding would encourage proceedings against American

shields testimony or statements to officials conducting criminal investigations. (*Irwin v. Murphy* (1933) 129 Cal.App. 713, 718-719 [19 P.2d 292] [report of grand jury]; *Block v. Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 392-394 [182 Cal.Rptr. 438] [toxicologist's report and subsequent testimony at preliminary hearing].) However, California courts have split about whether communications that initiate or prompt criminal investigations are subject to the absolute privilege.

The majority of cases that have addressed this issue follow *Williams v. Taylor* (1982) 129 Cal.App.3d 745 [181 Cal.Rptr. 423]. In *Williams*, the president of a car dealership investigated the work of a discharged employee and reported what he believed to be criminal activity to the police. (*Id.* at p. 750.) After a criminal investigation, the employee was charged with several crimes. Some of the charges were dismissed, and the employee was acquitted of the remaining crimes. (*Ibid.*) The court in *Williams* concluded that the absolute privilege shielded the president's report to the police, reasoning that the qualified privilege was inadequate to provide the " 'open channel of communication' " between citizens and police needed for effective investigation of crimes. (*Id.* at pp. 753-754, quoting *King v. Borges* (1972) 28 Cal.App.3d 27, 34 [104 Cal.Rptr. 414].) Subsequently, *Williams* has been followed on similar facts by *Hunsucker v. Sunnyvale Hilton Inn* (1994) 23 Cal.App.4th 1498, 1504 [28 Cal.Rptr.2d 722], *Passman v. Torkan* (1995) 34 Cal.App.4th 607, 616-620 [40 Cal.Rptr.2d 291], *Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101, 112 [80 Cal.Rptr.2d 60], and *Johnson v. Symantec Corp.* (N.D.Cal. 1999) 58 F.Supp.2d 1107, 1108-1113.

*Williams* was rejected in *Fenelon v. Superior Court* (1990) 223 Cal.App.3d 1476 [273 Cal.Rptr. 367]. In *Fenelon*, the court concluded that reports of potential criminal activity to the police were subject to the qualified privilege, citing case law from other jurisdictions, and reasoning that *Williams* permitted " 'effective character assassination . . . .' " (223 Cal.App.3d at p. 1483, quoting *Toker v. Pollak* (1978) 44 N.Y.2d 211, 222 [405 N.Y.S.2d 1, 7, 376 N.E.2d 163, 169].) Subsequently, no reported California case has followed *Fenelon*.[6] The courts agreeing with *Williams* have found *Fenelon* unpersuasive, concluding that the constitutional and procedural safeguards

---

citizens that lack guarantees of fairness. We are not persuaded. As we explain below, evidence that a foreign proceeding is devoid of adequate procedural safeguards may raise a triable issue as to whether communications connected with the proceeding fall within the scope of the absolute privilege, but no such evidence is present here.

[6]We recognize that in *Devis v. Bank of America* (1998) 65 Cal.App.4th 1002, 1007-1008 [77 Cal.Rptr.2d 238], the court cited *Williams* and its progeny with approval, but suggested in dicta that false reports to the police are subject only to the qualified privilege, citing primarily *Turner v. Mellon* (1953) 41 Cal.2d 45, 48 [257 P.2d 15], and *Du Lac v. Perma Trans Products, Inc.* (1980) 103 Cal.App.3d 937, 941 [163 Cal.Rptr. 335]. However, these cases, which

governing California's judicial system undermine the concern that applying the absolute privilege to police reports endangers the rights of the reported wrongdoer. (*Hunsucker v. Sunnyvale Hilton Inn, supra*, 23 Cal.App.4th at p. 1504; *Johnson v. Symantec Corp., supra*, 58 F.Supp.2d at p. 1113.)

We believe that *Williams* and its progeny represents the better view on the application of the absolute privilege to police reports made in California. However, as we have observed, the rationale offered in the *Williams* line of cases extends only to police reports that may trigger proceedings governed by adequate procedural safeguards. Absent such safeguards, only reports made in good faith, and without malice, merit protection as privileged. Accordingly, we conclude that on summary judgment, when there is evidence that a particular report of potential criminal activity in a foreign country triggered an investigation lacking adequate procedural safeguards, there is a triable issue of fact as to whether the report is subject to the absolute privilege, rather than the qualified privilege.

Because the record indicates that Alamo's complaints arose out of access to her residence, and that the local district attorney conducted brief investigations before dismissing the complaints, we conclude that the burden shifted to appellants to show that the qualified privilege should be applied to these complaints.[7] On this matter, Rees states in his declaration that, as the result of the complaints, he became familiar with the Mexican criminal justice system and its law regarding dispossession. He further states that a person convicted of dispossession can be imprisoned for several years. If the district attorney finds that a complaint of dispossession is supported by two witnesses who testify under oath, the district attorney may decide to indict the alleged wrongdoer. Those indicted are subject to immediate arrest, "might well be unable to secure pre-trial release from such custody," and "do not receive the [c]onstitutional protections provided to criminal defendants in the United States."

In our view, these vague and conclusory statements do not raise a triable issue about the procedural fairness of the pertinent Mexican proceedings. In California, as in Mexico, a person charged with a felony is subject to immediate arrest, and may encounter difficulties securing pretrial release from custody. Furthermore, that Mexico's judicial system is not subject to the provisions of the United States and California Constitutions, taken by itself, is insufficient to show that persons charged with dispossession are denied adequate procedural protections.

---

involve tort claims of false arrest and false imprisonment, predate *Silberg*, in which our Supreme Court indicated the broad scope of the absolute privilege (*Silberg v. Anderson, supra*, 50 Cal.3d at p. 216), and thus they are not persuasive on the issue before us.

[7] On summary judgment, we may review all the evidence submitted by the parties to determine whether the moving parties carried their initial burden. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 750-751 [41 Cal.Rptr.2d 719].)

Because appellants failed to raise a triable issue about the application of the absolute privilege, it is unnecessary for us to assess whether there is evidence that respondents acted with malice in connection with Alamo's complaints. Summary judgment was properly granted on the ground that respondents' conduct regarding these complaints was absolutely privileged.

Appellants disagree, contending that there is sufficient evidence that respondents republished their accusations outside the scope of the privilege. However, their sole evidence of republication is Rees's declaration statement that "[s]ome members [of the condominium complex] claimed to have learned of the charges by statements from [respondents] . . . ." The trial court properly sustained respondents' hearsay objection to this statement.[8]

Appellants also contend that they were forced to publish respondents' accusations at meetings of members of the condominium complex, and that this publication can support a defamation claim against respondents. We are not persuaded.

■ In some cases, the originator of a statement may be liable for defamation when the person defamed republishes the statement, provided that the originator "has reason to believe that the person defamed will be under a strong compulsion to disclose the contents of the defamatory statement to a third person *after* he has read it or been informed of its contents. [Citations.]" (*McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787, 796 [168 Cal.Rptr. 89].) However, this rule "has been limited to a narrow class of cases, usually where a plaintiff is compelled to republish the statements in aid of disproving them." (*Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1285 [286 Cal.Rptr. 198].) Moreover, the originator of the statement must foresee the likelihood of compelled republication when the statement is originally made. (*McKinney v. County of Santa Clara, supra,* 110 Cal.App.3d at p. 798.)

Here, appellants' contention is supported solely by Rees's terse declaration statement that some members of the condominium complex learned of respondents' accusations "from compelled republication by [appellants] at members' meetings." Nothing in this bald statement indicates that the republication was necessary *in order* to disprove the accusations, and the record otherwise indicates that the local district attorney dismissed the accusations independently of any such republication. Furthermore, nothing in this statement suggests that respondents could foresee that any such republication

---

[8]Appellants contend that this hearsay objection was waived because respondents failed to obtain an oral ruling on the objection during the hearing on the summary judgment motions. (Code Civ. Proc., § 437c, subd. (d).) However, the trial court's ruling on this objection is found in the minute order from the hearing, which is the final record of the trial court's rulings at the hearing. (7 Witkin, Cal. Procedure, *supra,* Judgment, §§ 55-57, pp. 584-588.)

would be necessary when they made their statements to the local district attorney. We therefore conclude that appellants failed to raise a triable issue regarding compelled republication.[9]

In sum, summary judgment was properly granted.

DISPOSITION

The judgment is affirmed.

Vogel (C. S.), P. J., and Hastings, J., concurred.

A petition for a rehearing was denied November 20, 2000, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied January 24, 2001. Kennard, J., was of the opinion that the petition should be granted.

---

[9]Appellants contend for the first time in their reply brief that their defamation claim may be viewed as a claim for malicious prosecution, and as such, it falls outside the scope of the absolute privilege. However, appellants may not raise a factually novel legal theory of liability on appeal. (*United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 623 [81 Cal.Rptr.2d 708]; *City of San Diego v. Rider* (1996) 47 Cal.App.4th 1473, 1492-1493 [55 Cal.Rptr.2d 422].)

Finally, during oral argument before us, appellants suggested for the first time that there are triable issues regarding choice of law. This contention is waived by appellants' failure to raise it before the trial court and in their briefs. (*Livingston v. Marie Callenders, Inc.* (1999) 72 Cal.App.4th 830, 834-835 [85 Cal.Rptr.2d 528]; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457].)