Richie GARRET, Plaintiff-Appellee,

v.

DEAN SHANK DRILLING CO., INC.,
Defendant-Appellant.

No. 84–4477.

United States Court of Appeals,
Fifth Circuit.

Sept. 15, 1986.
Rehearing Denied Oct. 15, 1986.

Perrin C. Butler, Metairie, La., for defendant-appellant.

Kerry E. Shields, Keaty and Keaty, Robert B. Keaty, New Orleans, La., for plaintiff-appellee.

Before GARWOOD and ROBERT MADDEN HILL, Circuit Judges, and MARTIN L.C. FELDMAN * District Judge.

## OPINION

GARWOOD, Circuit Judge:

Plaintiff-appellee Richie Garret (Garret) was injured while constructing a drilling rig on a barge moored in navigable waters in Louisiana. The jury determined that Garret was a seaman, and, therefore, eligible to recover under the Jones Act, 46 U.S.C. § 688. Garret's employer, defendant-appellant Dean Shank Drilling Company, Inc. (Dean Shank), owner of the barge, appeals, claiming that the barge was never in navigation for the purpose for which it

was intended, and, therefore, was not a vessel in navigation such that Garret could be considered a seaman under the Jones Act. Dean Shank also contends that Garret may not recover under the general maritime law or section 905(b) of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b).[1] We agree with these contentions of Dean Shank, and accordingly reverse the judgment against it.

### Facts and Proceedings Below

Garret was hired by Dean Shank around August 1, 1981, to work as a roustabout on a barge known as Drilling Rig Number 4. Delta Services, Inc. (Delta) performed the initial construction of the barge for Dean Shank at Delta's shipyard in Houma, Louisiana, and when the barge was delivered there by Delta to Dean Shank it consisted of a hull and flat deck only. The barge hull was transported by tug from Delta's shipyard in Houma, Louisiana via the intercoastal waterway to a location near Harvey, Louisiana. There the barge was moored in a canal alongside Strike'N Arc's welding yard, where Dean Shank, in accordance with its original purpose in acquiring the hull, proceeded to add all the superstructure, fixtures, and appurtenances—such as crew's quarters, kitchen, derrick, stairs, navigation lights, etc.—necessary to render the barge capable of functioning in its intended role as an oil and gas drilling rig. The barge remained afloat during this construction work, and it was turned two or three times to facilitate placing equipment on it.

Garret performed general and heavy labor in this construction work on the barge. He assisted in the movement of the barge on various occasions, although he was not on the barge (or its tug) during its trip from Houma to Strike'N Arc's yard. On September 11, while carrying a piece of pipe across the deck of the barge, Garret alleges that he stepped in an uncovered

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

1. Congress has modified the name of the Act by changing "Longshoremen" to "Longshore." *See*

Longshore and Harbor Workers' Compensation Act Amendments of 1984. Pub.L. No. 98–426, § 27(d).

trench and twisted his right knee. When Garret was injured, the barge had been at the Strike'N Arc yard for some time, and he was performing the mentioned construction work on it, fitting it out for its intended service as a drilling rig. At that time, the hull still lacked crew's quarters, kitchen, derrick, and navigation lights. It was not ultimately completed until late November.

Garret filed suit in the Western District of Louisiana, claiming damages under the Jones Act and under maritime law for unseaworthiness and negligence. Garret sued his employer, Dean Shank, and various other parties who were eventually dismissed. The case was tried to the jury, and Dean Shank filed a motion for directed verdict at the close of Garret's case and at the close of all evidence. The jury answered special issues finding that Garret was a Jones Act seaman, that Dean Shank was negligent, that Drilling Rig Number 4 was unseaworthy, and that all of Garret's damages were caused by Dean Shank. The jury awarded $150,000 in damages. The district court rendered judgment on the verdict in favor of Garret against Dean Shank for $150,000. Dean Shank moved for judgment notwithstanding the verdict and a new trial. The district court denied Dean Shank's post-trial motions, ruling that Garret was entitled to recover as a Jones Act seaman, though not under section 905(b) of the LHWCA. Dean Shank brings this appeal.

### Discussion

 Dean Shank challenges the jury finding that Garret was a seaman within the meaning of the Jones Act. While the question of seaman status under the Jones Act is usually a question of fact for the jury, it can be decided as a matter of law where the facts show beyond question the lack of seaman status. *Reynolds v. Ingalls Shipbuilding*, 788 F.2d 264, 267 (5th Cir.1986); *Barrett v. Chevron USA*, 781 F.2d 1067, 1074 (5th Cir.1986). Sitting en banc in *Barrett*, we recently reviewed the principles related to determining seaman status and set forth a test for when a worker is a seaman within the meaning of the Jones Act. The worker is a seaman if he is assigned permanently to a vessel in navigation or performs a substantial part of his work on the vessel, contributing to the function of the vessel or to the accomplishment of its mission. *Barrett, supra* at 1072–74. We have defined a vessel as "in navigation" when the vessel is "engaged in an instrument of commerce and transportation on navigable waters." *Williams v. Avondale Shipyard, Inc.*, 452 F.2d 955, 958 (5th Cir.1971). A nonmerchant vessel is in navigation if it is engaged in its expected duties on navigable waters. *Id.* In this case, the vessel, Drilling Rig Number 4, was not in navigation for its intended purpose. Before the barge could operate as a drilling rig, it needed the addition of living quarters, a derrick, navigational lights, and other accoutrements. In a virtually identical case, *Hollister v. Luke Construction Co.*, 517 F.2d 920 (5th Cir.1975), we held that a bare-hull barge upon which a drilling rig and living quarters were being constructed was not in navigation. Garret argues that *Hollister* is distinguishable because the barge in *Hollister* had not yet been delivered to its final owner, whereas here the builder, Delta, had delivered the barge to its ultimate user, Dean Shank. We find this distinction to be unpersuasive. So long as a vessel has never been in navigation for its intended use, we do not think the determination of seaman status should turn on who is completing the construction of the vessel. The pivotal question is whether the vessel has been placed in navigation for its intended purpose. In *Williams, supra*, we held that a launched vessel conducting sea trials could not be considered "in navigation" because it was not yet being used for its intended purpose. The crucial factor in *Williams* was not that the ship had not been delivered to the owner, but that the very activity in which it was engaged, sea trials, showed that it was not in use for its intended purpose.

 Garret also relies on our holding in *Fredieu v. Rowen Companies, Inc.*, 738 F.2d 651 (5th Cir.1984), in which we upheld a district court's finding of fact that a drilling rig was not a vessel in navigation. Garret cites the case for the proposition

that whether a vessel is in navigation is a factual question. As we stated in *Fredieu,* except for rare instances, the question of whether a vessel is in navigation is a question of fact. This case, however, is one of those rare instances where the facts are such that we can determine as a matter of law that the vessel was not in navigation. *See Williams, supra,* at 958. The factual setting of *Fredieu* supports our decision that Drilling Rig Number 4 was not in navigation. The barge in *Fredieu* was much nearer completion as a drilling rig than Drilling Rig Number 4, having its navigational lights, an operating generator, lighting, plumbing, a galley, living quarters, and personnel aboard the rig, and yet the district court found that the rig in *Fredieu* was not in navigation. The evidence in this case clearly establishes that Drilling Rig Number 4 was never in navigation for its intended purpose, and, therefore, the first criteria of the seaman test fails. Without a vessel "in navigation" there can be no Jones Act coverage.[2] *Reynolds, supra,* at 267.

■ In his petition, Garret also claimed damages for negligence under the general maritime law, and the jury returned a verdict for Garret on this issue. Garret's negligence claim must fail, however, because

he is covered under the LHWCA, which covers harbor workers engaged in shipbuilding on navigable waters of the United States. 33 U.S.C. §§ 902(3) & (4). As he is not a seaman, Garret is not within the LHWCA's exclusion of a "member of a crew of any vessel." 33 U.S.C. § 902(3)(G). It is uncontroverted that Drilling Rig Number 4 was on navigable waters of the United States and that Garret was involved in shipbuilding. Since Garret is covered by the LHWCA, its section 905(a) prevents any suit by him against his employer, Dean Shank, except as authorized by section 905(b). 33 U.S.C. §§ 905(a) & (b).[3] At the time this suit was filed, section 905(b) authorized a covered employee's action for injuries "caused by the negligence of a vessel," but provided that: "If such person [the injured worker] was employed by the vessel to provide shipbuilding or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing shipbuilding or repair services to the vessel." 33 U.S.C. § 905(b) (1972).[4] Here, as the district court correctly recognized, the evidence establishes without dispute that any negligence on the part of Dean Shank was that of its employees engaged in shipbuilding work. Therefore, under the LHWCA Garret's

---

**2.** Even though we determine that Garret lacked seaman status, this case was still within the district court's admiralty jurisdiction. We held in *Hall v. Hvide Hull No. 3,* 746 F.2d 294, 302–03 (5th Cir.1984), *cert. denied,* — U.S. —, 106 S.Ct. 69, 88 L.Ed.2d 56 (1985), that Congress intended by the 1972 amendments to the LHWCA to preserve within federal admiralty jurisdiction the traditional maritime tort remedy of LHWCA-covered employees for injuries in the course of employment suffered on navigable waters and caused by the negligence of a vessel, broadly defined, while on navigable waters, notwithstanding the new rule of *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), that a maritime connexity as well as a maritime location was thenceforth necessary for admiralty tort jurisdiction and the earlier holdings that shipbuilding is not maritime business. *Thames Towboat Co. v. The Schooner Francis McDonald,* 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed.245 1920). Garret was covered by the LHWCA. *See* 33 U.S.C. § 902 and discussion, *infra.* It is undisputed that at the time of the accident the barge was on navigable waters. The fact that Garret cannot pre-

vail on his negligence claim under section 905(b) of the LHWCA, *see infra,* does not destroy federal admiralty jurisdiction since the jurisdictional question is separate from the merits of the claim. *May v. Transworld Drilling Co.,* 786 F.2d 1261, 1263 (5th Cir.1986).

**3.** Similarly, section 905(b) provides that "[t]he remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter" Under 33 U.S.C. § 902(21), "vessel" is defined so as to include the owner of the vessel. Dean Shank owned the barge.

**4.** In 1984, section 905(b) was amended, and the sentence quoted in the text now reads as follows:

"If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any

negligence claim against Dean Shank is barred.[5] *See Reynolds, supra,* at 273; *Fredieu, supra,* at 653. The same reasoning applies to Garret's unseaworthiness claim, as section 905(b) provides that "[t]he liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred."[6]

### Conclusion

Drilling Rig Number 4 was never a vessel in navigation for its intended purpose, and, therefore, Garret was not a seaman within the meanings of the Jones Act. The LHWCA prohibits Garret from recovering from his employer, Dean Shank, on his general maritime law negligence and unseaworthiness claims. The judgment of the district court is reversed.

REVERSED.

capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) *or against the employees of the employer."* 33 U.S.C. § 905(b) (1986).

This provision, as amended, applies only to injuries sustained after September 28, 1984; Garret was injured in September 1981. Furthermore, section 905(b), as amended, prohibits a negligence recovery against an employer if the employer is the owner of the vessel. Dean Shank was the owner of the vessel and had employed Garret to work on the vessel during its outfit-

ting; therefore, Garret would be limited to his LHWCA remedies.

5. Garret admitted at oral argument that he could not pursue a section 905(b) claim.

6. Further, a warranty of seaworthiness is not owed while a vessel is still under construction. *Hollister, supra,* at 921. One does not warrant that an incomplete vessel is seaworthy. *Williams, supra,* at 957.