**Bobby D. ADAMS**

v.

**WEEKS MARINE, INC.**

Civ. A. No. G–94–433.

United States District Court, S.D. Texas, Galveston Division.

May 2, 1995.

he allegedly received while working on a ship owned by Defendant. Before the Court now is Defendant's Motion for Summary Judgment on the grounds that Adams is not a seaman pursuant to the Jones Act, 46 U.S.C.App. § 688. For the reasons stated below, the Court finds that Defendant's Motion should be **GRANTED.**

Adams was formerly the superintendent of the Barge 532, which is owned and operated by Weeks Marine. Adams worked on Barge 532 offshore Trinidad until the Barge came off contract during July, 1993, and was returned to dockside at Aker Gulf Marine Yard in Ingleside, Texas. The Barge remained there from July, 1993 through March, 1994. Defendant alleges that the Barge was undergoing major repairs and winterization at the Ingleside facility; Plaintiff alleges that no major repairs were scheduled up to the time he was injured and that no genuine winterization procedures were carried out.

It is undisputed that while Barge 532 was moored at the Aker Gulf Marine Yard the power was shut off in the ship; the entire crew had been dismissed, with the sole exception of Plaintiff; and Adams was both living and taking his meals off ship. Adams alleges that on or about January 8, 1994, he came out to lock the deck office door after working a twelve-hour shift. Adams allegedly tripped on the crane mat—a large apparatus apparently constructed of 12″ × 12″ timbers. In falling, Adams injured his right shoulder and arm by striking the crane mat and hurt his left hip when he hit the deck. Plaintiff subsequently brought this suit pursuant to the Jones Act, general admiralty law, and the Texas common law.

Michael Eugene Shelton, Houston, TX, for plaintiff.

Charles Michael Brackett, Brown Sims Wise & White, Houston, TX, for defendant.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

This is a maritime personal injury case in which Plaintiff Bobby D. Adams ("Adams") has brought suit against Defendant Weeks Marine, Inc. ("Weeks Marine") for injuries

■ Defendant seeks summary judgment against Plaintiff's claims on the grounds that Adams was not a seaman for purposes of the Jones Act or general maritime law at the time of his injury.[1] It is well established that the Jones Act applies only to seamen. 46 U.S.C.App. § 688; *Calhoun v. Yamaha Motor Corp.*, 40 F.3d 622, 638 (3rd

1. Defendant's vaguely-stated motion is unclear as to whether Defendant seeks summary judgment on Plaintiff's Jones Act claim alone, or whether Defendant also challenges Plaintiff's general maritime law and Texas common law claims. In response, the Court will consider all Plaintiff's claims in light of Defendant's claim that Adams is not a seaman.

Cir.1994). In addition, a seaman injured while performing duties for his employer aboard a vessel may sue the vessel's owner under general maritime law, *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 384 (5th Cir.1985), and has the right to receive maintenance and cure for any necessary medical services if he is injured while in the service of a vessel. *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1245 (5th Cir.) *cert. denied sub nom. Murphy Exploration & Prod. Co. v. Davis*, — U.S. —, 115 S.Ct. 78, 130 L.Ed.2d 32 (1994). Determination of a seaman's status is appropriate on summary judgment. *Garret v. Dean Shank Drilling Co., Inc.*, 799 F.2d 1007, 1009 (5th Cir.1986); *White v. Valley Line Co.*, 736 F.2d 304, 305 (5th Cir.1984). To meet the test for seaman status, a claimant must prove either (1) his permanent assignment to a vessel or fleet of vessels, or (2) performance of a substantial part of the claimant's work on a vessel or fleet of vessels. *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir.1986).

■ Defendant argues that Adams was not a seaman at the time of his injury because Barge 532 was not "in navigation" at the time of the accident. In support of this position, Defendant argues both that the vessel was moored at dockside for repairs and that it was laid up for winterization. The test for whether or not a vessel is "in navigation" has been stated in this Circuit to be whether it is "engaged as an instrument of commerce and transportation on navigable waters." *Williams v. Avondale Shipyards, Inc.*, 452 F.2d 955, 958 (5th Cir.1971); *Garret*, 799 F.2d at 1009. Although this usually involves a factual determination, the question of whether a ship is "in navigation" can be appropriate on summary judgment where the facts clearly indicate that the test has been

met. *Garret*, 799 F.2d at 1009. The Court believes that in this case the facts on record clearly indicate that Barge 532 was not in navigation at the time Plaintiff was injured.

■ The Fifth Circuit's test for "in navigation" is an elaboration of the somewhat vague test laid down by the Supreme Court on the same issue: "The test for determining whether a vessel is in navigation is the 'status of the ship.'" *Roper v. United States*, 368 U.S. 20, 22, 82 S.Ct. 5, 7, 7 L.Ed.2d 1 (1959) (quoting *West v. United States*, 361 U.S. 118, 122, 80 S.Ct. 189, 192–93, 4 L.Ed.2d 161 (1959)).[2] This Court's survey of cases deciding this issue indicates that the primary factors to be considered include whether the crew has been dismissed; the length of time the ship was under repair; the control over the ship retained by the shipowner at the time of injury; and whether the ship is self-powered or not. *See Hodges v. S.S. Tillie Lykes*, 512 F.2d 1279 (5th Cir.1975); *Johnson v. Oil Transport Co., Inc.*, 440 F.2d 109 (5th Cir.), *cert. denied*, 404 U.S. 868, 92 S.Ct. 109, 30 L.Ed.2d 111 (1971); *Bodden v. Coordinated Caribbean Transport, Inc.*, 369 F.2d 273 (5th Cir.1966); *Union Barge Line Corp. v. Allen*, 361 F.2d 217 (5th Cir.1966), *cert. denied*, 385 U.S. 1006, 87 S.Ct. 713, 17 L.Ed.2d 545 (1967); *Lawlor v. Socony Vacuum Oil Co.*, 275 F.2d 599 (2nd Cir.), *cert. denied*, 363 U.S. 844, 80 S.Ct. 1614, 4 L.Ed.2d 1728 (1960); *McClendon v. OMI Offshore Marine Service*, 807 F.Supp. 1266 (E.D.Tex.1992).[3]

In this case, the Court believes that each of these factors indicates that Barge 532 was *not* in navigation at the time of Adams' injury. It is undisputed that the crew of Barge 532 had been dismissed and that Plaintiff was

---

2. Courts have long acknowledged that no precise determination for what constitutes "in navigation" can really be determined apart from the facts of each case. *See, e.g., Hawn v. American S.S. Co.*, 107 F.2d 999, 1000 (2nd Cir.) (1939) ("It is impossible to define the phrase ["in navigation"] in general terms; the words are colloquial and their fringe will always be somewhat ragged. Perhaps the best hope is that, as the successive variants appear, they will finally serve rudely to fix the borders.") The Court's reading of cases since *Hawn* suggests that this hope has not been fully met.

3. Apparently confusing himself with the wizard Merlin, Plaintiff in the last-cited case—a crew-member acting as caretaker on a towboat in drydock—was found not to be on a vessel "in navigation" when he was overcome by mercury vapors when he attempted to transform mercury into gold by baking it inside a potato. Presumably, Plaintiff was wiser, if not wealthier, for his experiment.

the sole caretaker of the vessel while it was in dock. Plaintiff disputes Defendant's claim that he was a "caretaker" rather than its "superintendent," but the Court finds this distinction to be merely semantic. Whether or not Plaintiff was paid more or less than when the Barge was operating, and whether or not his job title was actually changed, it is clear that Plaintiff was the only crew member who remained with Barge 532 while it was in dock in the Aker Gulf Marine Yard. No other crew member or personnel of the Barge's owner seems to have had any control over Barge 532 during the time it was docked. The remaining crew had been dismissed, and Plaintiff was living off-ship at the time of injury. In addition, Plaintiff took his meals off-ship because the galley was closed, and the Barge's power was shut off while it was docked in the Aker Yard.

Plaintiff counters Defendant's claim that Barge 532 was undergoing extensive repairs during the nine months it was laid up. Instead, Plaintiff alleges that Barge 532 was placed in the Aker Yard because it had lost its contracts and simply had no work to do. The Court has carefully considered Plaintiff's evidence and finds that it does not overcome the Fifth Circuit's test of whether the vessel was engaged as an instrument of commerce. First, it is clear that *some* repair work was done on Barge 532; Defendant has submitted uncontroverted affidavit testimony that various subcontractors entered onto the Barge during its stay in the Aker Yard to do repair work. (See Defendant's Motion for Summary Judgment, Exhibit I). The Court simply does not believe that whether this work is characterized as "major" or not can determine the status of Barge 532 in the face of the above-mentioned facts.

It is clear that this vessel was in no way capable of engaging in navigation or commerce without a crew or power. Thus, this case is distinguishable from *Lawlor*, 275 F.2d 599, where a vessel that had been in drydock for three days with a full crew of officers and men doing their usual and accustomed work on board the vessel was held to be "in navigation" because no major repair work was being done. Unlike *Lawlor*, this case presents a vessel with no crew, no power, no officers (other than Plaintiff, who was not

even living on board the Barge), and no usual work on board the vessel. Under these facts, the Court finds that Barge 532 was not "in navigation" at the time of Plaintiff's injury and that, as a result, Adams was not a seaman for purposes of the Jones Act.

Having decided Defendant's Motion for Summary Judgment on these grounds, the Court does not reach Defendant's argument that Adams was not a seaman because Barge 532 was undergoing winterization at the time the injury occurred. Consequently, Defendant's Motion for Summary Judgment is GRANTED insofar as it objects to Plaintiff's claim under the Jones Act, and Adams' Jones Act claim is hereby **DISMISSED WITH PREJUDICE.**

■ Although the Court does not read Defendant's vaguely-defined Motion to seriously argue that Adams' non-seaman's status prevents a claim under general maritime law, for the sake of completeness, the Court will address this issue to prevent any future dispute on this point. It is elementary, of course, that Courts have long allowed Plaintiffs who are not seamen to bring suit under general maritime law. Indeed, general maritime law covers virtually all non-statutory tort actions occurring on navigable waters, though it does not allow non-pecuniary recovery by either seamen or non-seamen. *Garner v. Dravo Basic Materials Co.*, 768 F.Supp. 192 (S.D.W.Va.1991). However, the Court advises all parties in this case to carefully define the precise nature of the general maritime tort envisioned in this action, given the Court's ruling that Plaintiff is not a seaman, and to state with greater clarity whether it is brought under an unseaworthiness claim, a *Kermarec* claim, or both. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

In addition, the Court admonishes the parties to state in any further pleadings in this matter the precise legal authority that allows a general maritime tort to be brought in conjunction with a general negligence claim under Texas state law. It is not the function of this Court to research legal issues for parties, but the Court advises the parties to examine the nature of the Plaintiff's claims in light of *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

See also *Cohen v. S/S Consumer,* 746 F.2d 1069, 1072 (5th Cir.1984) ("[T]his is an action in admiralty, and federal admiralty law, not state law, controls."); *Dean v. Maritime Overseas Corp.,* 770 F.Supp. 309, 311 (E.D.La.1991), *aff'd.,* 981 F.2d 1256 (5th Cir. 1992) ("[T]he United States Supreme Court in *Pope & Talbot* noted that, while state law may supplement federal maritime policies, federal maritime law controls rights of recovery rooted in admiralty.").

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED,** and Plaintiff's claim under the Jones Act is hereby **DISMISSED WITH PREJUDICE.** Each party is to bear its own taxable costs in this matter. It is further **ORDERED** that the parties file no further pleadings on this matter, including motions to reconsider and the like. Instead, the parties are instructed to seek whatever relief they desire in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**