Rodney STEWART

v.

**MAGNUM TRANSCONTINENTAL CORP., et al.**

Civil Action No. G–98–631.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 14, 2000.

Kenneth Ross Citti, Citti & Crinion, Houston, TX, for Ross Citti.

A. Craig Eiland, Galveston, TX, for Rodney Stewart.

John Robert Walker, Brown Sims Wise & White, Houston, TX, Thomas Nolon Lightsey, III, Houston, TX, for Alaska National Ins., Alaska National Insurance Company.

Kyle D. Stallones, Eastham Watson Dale & Forney, Houston, TX, Robert L. Klawetter, Eastham Watson Dale & Forney, Houston, TX, for Magnum Transcontinental, Corporation, Louisiana Overseas Inc.

Andrea N. Moore, Masters and Associates, Houston, TX, for Crescent Electric Company Inc.

Merry C. Miller, Gann Miller & Edwards, Houston, TX, for Safway Scaffolding, Safway Scaffolding Company, Safway Steel Products, Inc.

J. Michael Ezzell, Ball & Weed, San Antonio, TX, for C & M Electrical Engineers, (Aberdeen) Ltd.

Robert L. Klawetter, Eastham Watson Dale & Forney, Houston, TX, for Lantz Services Inc., Alliance Marine Management Services, Inc.

John Wesley Bridger, Strong Pipkin et al, Houston, TX, for Timco Inc.

Ernest M. Powell, III, Kratochvil & Powell, Houston, TX, for ECP Tech Services Inc.

Lansford Orville Ireson, Jr., Ireson & Weizel, Houston, TX, for Sipco Services & Marine, Inc.

### ORDER DENYING DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

KENT, District Judge.

On October 5, 1997, Plaintiff Stewart was allegedly injured when he tripped and fell in a ballast tank on board the SSV LOUISIANA. He was allegedly injured a second time on December 14, 1997 when he fell from some scaffolding on the same vessel. Now before the Court is Defendants' Motion for Final Summary Judgment, filed October 25, 1999 by Defendants Lantz Services, Inc. and Louisiana Overseas, Inc. For reasons explained more fully below, this Motion is **DENIED.**

## I. FACTUAL AND PROCEDURAL SUMMARY

Plaintiff Stewart alleges that he was twice injured while working aboard the SSV LOUISIANA, a vessel owned by Defendant Louisiana Overseas, Inc. This vessel was at one time a multi-purpose diving support vessel operating in the North Sea and known as the STADIVE. Louisiana Overseas purchased this vessel in October 1995, renamed it the SSV LOUISIANA, and apparently intended to convert it into a semi-submersible drilling rig. Towards that end, the vessel embarked on a sixty-five day voyage from the North Sea to Galveston, Texas.

Shortly after arriving in Galveston, a compartment housing the diesel generator caught fire, resulting in significant damage to the vessel. Stewart was hired to perform pipe-fitting work. Defendant Lantz was responsible for overseeing the conversion and repair work on the vessel while it was docked in Galveston. Stewart was apparently hired by Magnum Transcontinental, a Defendant voluntarily dismissed from this action on December 22, 1999.

After experiencing two injuries, Stewart quit his job with his employer. Shortly afterwards, the LOUISIANA left Galveston and headed for a port in Brazil.

Defendants contend that Stewart is not a seaman, and consequently his only remedy is via the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. Two grounds are advanced in support of this conclusion. First, Defendants contend that Stewart is ineligible for seaman status because the LOUISIANA was not a "vessel in navigation." Second, Defendants contend that even if the LOUISIANA was a vessel in navigation, Stewart lacks the "substantial connection" to this vessel necessary to qualify as a seaman. The Court will address each of these contentions in turn.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

The Court notes that the question of seaman status is a mixed question of law and fact, and typically reserved for the trier of fact. *See Harbor Tug & Barge v. Papai,* 520 U.S. 548, 554, 117 S.Ct. 1535, 1540, 137 L.Ed.2d 800, 809 (1997) (determination of seaman status generally an issue of fact, although summary judgement is proper if the facts and the law reasonably support only one conclusion); *Chandris v. Latsis,* 515 U.S. 347, 369, 115 S.Ct. 2172,

2190, 132 L.Ed.2d 314 (1995) (whether plaintiff is a seaman is a mixed question of law and fact; it is the court's duty to define the proper legal standard, and, if reasonable minds could differ as to whether the plaintiff is a seaman, summary judgment is inappropriate); *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir.1995) (determination of seaman status is "generally one of fact"); *Williams v. Weber Management Services, Inc.*, 839 F.2d 1039, 1040 (5th Cir.1987) ("[t]he issue of Jones Act seaman status is left to the jury except in the rare circumstance where the underlying facts are undisputed and the record reveals no facts from which reasonable persons could draw conflicting inferences."); *Barrett v. Chevron U.S.A. Inc.*, 781 F.2d 1067, 1074 (5th Cir.1986) (determination of seaman status is "an inherently factual question"); *Grayson v. Petro–Drive, Inc.*, 912 F.Supp. 258, 260 (S.D.Tex.1996) (Kent, J.). Thus granting summary judgment against Plaintiff on the question of seaman status is appropriate only if no reasonable evidentiary basis exists to support a finding that the Plaintiff is a seaman.

### III. Vessel in Navigation

■ Defendants contend that the LOUISIANA had been withdrawn from navigation due to the extensive repair and conversion work performed on the vessel in Galveston. Plaintiff cannot be considered a seaman unless he had a substantial connection with a "vessel in navigation." *See Garret v. Dean Shank Drilling Co.*, 799 F.2d 1007, 1009–10 (5th Cir.1986) (newly constructed barge being fitting to serve as a drilling rig held not be a vessel in navigation); *Hollister v. Luke Constr. Co.*, 517 F.2d 920, 921 (5th Cir.1975) (barge under construction not yet a vessel in navigation).

■ The test for whether or not a vessel is "in navigation" has been stated by the United States Court of Appeals for the Fifth Circuit to be whether it is "engaged as an instrument of commerce and trans-

portation on navigable waters." *Williams v. Avondale Shipyards, Inc.*, 452 F.2d 955, 958 (5th Cir.1971); *see also Garret*, 799 F.2d at 1009. Although this usually involves a determination of fact, the question of whether a ship is in navigation can be appropriately decided on summary judgment where the facts clearly indicate that the test has been met. *See Garret*, 799 F.2d at 1009.

■ A number of factors guide the Court's analysis in cases such as this one, where the vessel was in repair at the time of the injury but unquestionably "in navigation" before then. First, the determination of whether a ship in repair is still in navigation depends upon the nature and extent of the repairs and who controls those operations. *See Wixom v. Boland Marine & Manufacturing Co.*, 614 F.2d 956, 957 (5th Cir.1980). Additionally, the Court looks to the time and cost required for the repair work, as well as whether the ship's power is secured or dismantled and whether the ship's crew is dismissed. *See id.; Shanks v. Hercules Offshore Corp.*, 58 F.Supp.2d 743, 745 (S.D.Tex.1999) (Kent, J.); *Slaydon v. Sonat Offshore Drilling, Inc.*, 818 F.Supp. 1009, 1011 (S.D.Tex.1993) (Kent, J.).

There is competent evidence before the Court that Defendant Lantz was in charge of the repairs to the LOUISIANA. Lantz not only was in charge of the repair work, but also managed the rig and was responsible for overseeing the marine crew that left with the ship for Brazil. A crew of twenty-five to thirty sailors manned the vessel on its trip from the North Sea to Galveston, and many, if not all, of these seamen left with the vessel when it sailed for Brazil several months later. A reasonable fact finder could conclude that Defendants did not consider the repairs to the vessel to be so extensive as to necessitate disbanding the crew and surrendering operational control over the vessel. *See Wixom*, 614 F.2d at 956.

Compared to the total cost of the vessel, the cost of the repairs appears to be relatively small. Although Defendants ultimately bear the burden of proof on this issue, Defendants proffered remarkably little financial evidence to the Court. Defendants apparently were paying approximately $56,000 per month for the repair and conversion work. This amount is presumably a small fraction of the value of the vessel once repairs were completed. *See Shanks*, 58 F.Supp.2d at 746 (determining that vessel still in navigation despite $5 million in repairs).

There is no evidence that the vessel's power sources were dismantled or otherwise inoperable. The vessel sailed under its own power from the North Sea to Galveston Island in July 1997. By May of 1998, the LOUISIANA had reached port in Brazil, again under its own power. *See Wixom*, 614 F.2d at 956 (vessel not in navigation where repairs totalled more than $25 million and ship's engines and propellers were inoperable for at least part of the repair period).

It appears that the LOUISIANA was undergoing repairs in Galveston for at most ten months. A reasonable fact finder could conclude that these repairs were not especially extensive in terms of time or money. Defendants maintained operational control over the vessel, a crew was in place, and the ship's engines were operable. The Court concludes that Defendants have failed to demonstrate that the LOUISIANA was, as a matter of law, no longer a "vessel in navigation."

### IV. Substantial Connection to a Vessel

 In order to qualify as a seaman, Plaintiff must have a connection to a vessel in navigation that is "substantial in both its duration and nature." *See Chandris*, 515 U.S. 347, 370, 115 S.Ct. 2172, 2191. Defendants contend that Stewart lacks a substantial connection to the vessel, because Stewart was only hired to perform pipe-fitting work while the vessel was docked in Galveston, and was not expected to sail

with the vessel after repairs were completed.

However, Stewart contends that he was hired not just to perform pipe-fitting work while the vessel was docked, but was also supposed to sail with the vessel to Brazil. In his affidavit, Stewart swears that he was hired to perform those repairs and also "to sail with the rig to perform routine maintenance once the repairs were complete." If Stewart is to be believed, Stewart fully expected to accompany the vessel on an extended voyage.

Moreover, according to Stewart, Defendants wanted Stewart to ask other workers if they would be willing to go with the vessel to Brazil. Stuart Jowell, Joseph Bonnette, and Charles Bonnette each swear that Stewart approached them about traveling with the rig to perform routine maintenance on the voyage to Brazil. Such testimony indicates that the Defendants wanted additional seamen to sail with the vessel once repairs were completed, and furthermore that Defendants thought Stewart would be able to convince others that such an extended work assignment would be desirable. A natural inference is that Defendants and Plaintiff both expected that Plaintiff would sail with the vessel to Brazil, and perhaps beyond. Because a reasonable fact finder could so conclude, Defendants have failed to establish that Stewart lacked a substantial connection with the vessel.

### V. CONCLUSION

For the reasons set forth above, Defendants have failed to show that no reasonable fact finder could conclude that the LOUISIANA was still a vessel in navigation, and that Stewart had a substantial connection to that vessel. Consequently, it is possible for a reasonable fact finder to conclude that Stewart was a seaman. Defendants' Motion for Final Summary Judgment on the issue of seaman status is **DENIED**. This case remains set for trial on April 17, 2000, at which time the Court

will again consider this issue. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**