**Timothy R. LEONARD, Plaintiff,**

v.

**TRANSOCEANIC SEDCO FOREX, et al. Defendants.**

**No. CIV.A.G–01–228.**

United States District Court, S.D. Texas, Houston Division. Galveston Division.

March 4, 2002.

---

Lawrence Blake Jones, Scheuermann and Jones, David C Whitmore, Scheuermann & Jones, Stephen F Armbruster, Scheuermann & Jones, New Orleans, LA, for Timothy R Leonard, plaintiffs.

Christopher David Bertini, Mills Shirley et al, Galveston, John C Elliott, Fitzhugh & Elliott, Houston, for Transoceanic Sedco Forex, R & B Falcon Drilling USA, Inc., Art Catering Inc, Hyundai Heavy Industries Co., Ltd., defendants.

### ORDER GRANTING DEFENDANT ART CATERING'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KENT, District Judge.

This is a maritime lawsuit filed by Plaintiff Timothy Leonard ("Leonard") against Defendants Transoceanic Sedco Forex, R & B Falcon Drilling U.S.A., Inc., Hyundai Heavy Industries, Co. and ART Catering, Inc. ("ART") pursuant to the general maritime law and the Jones Act, 46 U.S.C.App. § 688, or, alternatively, the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 901 *et seq.*, and Texas state law. Now before the Court is ART's Motion for Summary Judgment on Leonard's Jones Act claims, on grounds that Leonard is not a Jones Act seaman because the vessel upon which he worked was not "in navigation" on the date he was injured. After carefully reviewing ART's Motion, the Responses to ART's Motion filed by Leonard and Defendant R & B Falcon Drilling U.S.A., Inc., the summary judgment evidence and the applicable law, the Court finds ART's Motion for Summary Judgment meritorious and consequently, the Motion is hereby **GRANTED.**

### I.

The DEEPWATER NAUTILUS ("Nautilus") was originally manufactured, subjected to a series of sea trials, issued its

ABS certification and registered as a Panamanian vessel in South Korea. Subsequently, the Nautilus was "piggy backed" on the M/V BLACK MARLIN from South Korea to the Gulf of Mexico. When it left South Korea, the Nautilus was complete and ready for deployment as a drilling rig, save for a few pieces of equipment. Upon its arrival in the Gulf of Mexico, ocean tugs towed the Nautilus to the Port of Galveston and left the rig floating dockside. While the Nautilus was docked in Galveston, drilling supplies were loaded onboard and a portion of its optional equipment was swapped out. On June 8, 2000, the Nautilus left the Port of Galveston for an offshore test site. Four days later, the Nautilus began earning its first commercial daily rates as a drilling rig.

ART, a food and housekeeping services company, primarily serves oilfield customers on oil rigs and fixed platforms. Leonard, an ART employee, worked aboard the Nautilus as a galley hand while the vessel was floating dockside in Galveston. On May 22, 2000, Leonard was injured when he allegedly slipped on the vessel's deck. Leonard was no longer working aboard the Nautilus on June 8, 2000 when the vessel left Galveston, and has not worked aboard the Nautilus at any time since.

## II.

■ In order to recover damages pursuant to the Jones Act, an injured plaintiff must be a seaman at the time of his injury. *See* 46 U.S.C.App. § 688, *White v. Valley Line Co.*, 736 F.2d 304, 305 (5th Cir.1984). To qualify as a Jones Act seaman, a plaintiff must prove that he (1) was permanently assigned to, or performed substantial work on, a vessel in navigation; and (2) contributed to the function of the vessel or the accomplishment of its purpose. *See Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067, 1073 (5th Cir.1986). The issue of seaman status is a mixed question of law and fact. *See Harbor Tug & Barge v.*

*Papai*, 520 U.S. 548, 554, 117 S.Ct. 1535, 1540, 137 L.Ed.2d 800, 809 (1997) (explaining that while determination of seaman status is generally a factual issue, summary judgment is proper if the fact s and law support only one reasonable conclusion); *Chandris v. Latsis*, 515 U.S. 347, 369, 115 S.Ct. 2172, 2190, 132 L.Ed.2d 314 (1995) (noting that summary judgment is improper where reasonable minds could differ regarding seaman status);*Williams v. Weber Mgmt.Servs., Inc.*, 839 F.2d 1039, 1040 (5th Cir.1987) ("The issue of Jones Act seaman status is left to the jury except in the rare circumstance where the underlying facts are undisputed and the record reveals no facts from which reasonable persons could draw conflicting inferences."). Accordingly, granting summary judgment against Leonard on seaman status is appropriate only if no reasonable evidentiary basis exists to support a finding that he was a seaman at the time of his alleged injury.

## III.

■ ART contends that Leonard was not a seaman, and therefore not covered by the Jones Act, because the Nautilus was not yet "in navigation" at the time that Leonard was injured. The Fifth Circuit's test for whether a vessel is "in navigation" asks whether the vessel is "engaged as an instrument of commerce and transportation on navigable waters." *Williams v. Avondale Shipyards, Inc.*, 452 F.2d 955, 958 (5th Cir.1971). A public non-merchant vessel is in navigation if it is engaged in its expected duties on navigable waters. *See Garret v. Dean Shank Drilling Co.*, 799 F.2d 1007, 1009 (5th Cir. 1986) (citing *Williams*, 452 F.2d at 958). Although "in navigation" status, like seaman status, usually involves a factual determination, the question of whether a vessel was in navigation at a particular time can be appropriately decided at the sum-

mary judgment stage where the relevant facts clearly indicate that the requirements for "in navigation" have been satisfied. *See Stewart v. Magnum Transcon. Corp.,* 81 F.Supp.2d 753, 756 (S.D.Tex.2000) (citing *Garret,* 799 F.2d at 1009); *Shanks v. Hercules Offshore Corp.,* 58 F.Supp.2d 743, 745 (S.D.Tex.1999).

 Past Fifth Circuit decisions clearly establish that "the pivotal question [with respect to seaman status] is whether the vessel has been placed in navigation for its *intended purpose.*" *Garret,* 799 F.2d at 1009 (emphasis added) (finding that barge being fitted as drilling rig was not "in navigation" for purposes of affording a worker seaman status, where before barge could operate as a drilling rig, its intended use, the installation of additional equipment was required); *see also Fredieu v. Rowan Cos., Inc.,* 738 F.2d 651, 652–54 (5th Cir.1984) (holding that a rig with navigational lights, an operating generator, lighting, plumbing, a galley, living quarters and personnel aboard was not "in navigation" because it had not yet been put to use as a drilling rig); *Williams,* 452 F.2d at 958 (holding that a launched vessel conducting sea trials could not be considered "in navigation" for Jones Act purposes because it was not yet engaged in drilling, its intended use). In this case, the undisputed evidence establishes without a doubt that the Nautilus was not carrying out its intended purpose (drilling) until *after* Leonard was injured. Therefore, because the Nautilus was not an "instrumentality of commerce" at the time of Leonard's injury, the applicable Fifth Circuit precedent compels a conclusion that the first criteria of the seaman test fails. Without a vessel "in navigation," there can be no Jones Act coverage. *See Garret,* 799 F.2d at 1010; *see also Reynolds v. Ingalls Shipbuilding,* 788 F.2d 264, 267 (5th Cir.1986). Thus, this case qualifies as one of the rare instances where the facts are such that the Court can determine as a matter of law that the vessel at issue was not in navigation. *See Williams,* 452 F.2d at 958. Consequently, ART's Motion for Summary Judgment on Leonard's Jones Act claim is hereby **GRANTED** on grounds that Leonard is not a Jones Act seaman for purposes of this case. A Final Judgment on such claims will be issued in due course. Leonard's remaining claims remain pending, subject to further resolution by the Court.

**IT IS SO ORDERED.**